No. 10,671.

## WHIPPERMAN v. SMITH ET AL.

MORTGAGE.—*Construction of Contract.*—*Assignment of Certificate of Stock in Building Association.*—A mortgage "to secure the payment, when the same becomes due, of three shares in the M. Loan, etc., Association" (which had been assigned by the mortgagor to the mortgagee), "in value, when the same matures, of $600. The mortgagor agrees to pay promptly to the association all dues on said shares; that upon his failure to do so the mortgagee may foreclose, as a part of the purchase-money, for all dues necessary to complete said shares to make them par. This mortgage is to secure the purchase-money for the property herein described, and the mortgagor agrees to pay said sum above secured," secures only the payment of the dues necessary to secure to the mortgagee the shares assigned to him, and not the payment of $600 by the association upon maturity of the stock.

From the White Circuit Court.

*J. M. Justice*, for appellant.

*M. M. Sill*, *T. F. Palmer*, *A. W. Reynolds* and *E. B. Sellers*, for appellees.

ELLIOTT, C. J.—The appellee Jacob C. Smith was the owner of three shares of stock in the Monticello Loan, Saving Fund and Building Association, and assigned them to James M. Justice, by whom they were assigned to the appellant. The assignments are to the following tenor and effect:

"For value received I hereby sell, transfer and assign to J. M. Justice the share of stock within named, and authorize the secretary to make the necessary transfer on the books of the company. Witness my hand and seal this 11th day of May, 1877.                                    J. C. SMITH.

"E. B. SELLERS, Secretary.

"For value received I hereby sell, transfer and assign to Henry Whipperman the share of stock mentioned, and authorize the secretary to make the necessary transfer on the books of the company. Witness my hand and seal this 25th day of January, 1878.                          JAMES M. JUSTICE.

"Attest: E. B. SELLERS, Secretary."

There is a separate assignment of each of the three shares, but they are all alike, and in setting out one we show the legal tenor and effect of all. The certificates were assigned to Justice in payment of the purchase-money of real estate sold by him to the appellee. At the time the sale was made and certificates assigned, the appellees executed the following mortgage:

"This indenture witnesseth, that Jacob C. Smith, of White county, in the State of Indiana, mortgages and warrants to J. M. Justice, of Cass county, in the State of Indiana, the following real estate in White county, in the State of Indiana, to wit: Four (4) feet off of the north side of lot No. four (4) in the original plat of the town of Monticello; also sixteen (16) feet off of the south side of lot No. three (3) in the original plat of the town of Monticello, to secure the payment, when the same become due, of three shares in the Monticello Loan, Saving Fund and Building Association, Nos. 375, 376 and 377, in value when the same matures of six hundred dollars. The mortgagor expressly agrees to keep paid up promptly all dues on said three shares assigned to the mortgagee herein, coming to the association; that upon his failure so to do said mortgagee shall have the right to foreclose as a part of the purchase-money for all dues necessary to complete said three shares to make them par. That this mortgage is given to secure the purchase-money for property herein described, and the mortgagor expressly agrees to pay said sum above secured without relief from valuation and appraisement laws. In witness whereof the mortgagors have hereunto set their hands and seals this 23d day of April, 1877.

"JACOB C. SMITH.
"EUPHEMIA SMITH."

These instruments are set forth in the complaint of the appellant, and it is averred that this plaintiff received on share No. 375 the sum of one hundred and fifty dollars; that there is still due on said three shares seven hundred dollars which is wholly unpaid. Plaintiff further avers that said Monticello

Whipperman v. Smith *et al.*

Loan, Saving Fund and Building Association, was on the 1st day of January, 1880, when all shares of said association became due, openly and notoriously insolvent, and has ever since been unable to pay any part of said claims now due.

Copies of the certificates of stock are also set forth in the complaint, and there is no promise in them to pay any sum of money; they simply recite that the holder is entitled to a designated share of the capital stock of the association. All that the certificates assume to vest in the person to whom they were issued is the right of a stockholder of the association; there is no undertaking to pay money, nor is there any promise that such rights shall be of any value. No action, therefore, can be founded on them, except to vindicate the rights of a stockholder, or to recover such benefits as a stockholder is entitled to under the statute, articles of association and by-laws of the corporation. A certificate of stock does not carry with it a contract or promise to pay money. It simply invests the holder with the rights of a corporator. If, then, the appellant secured the rights of a stockholder, he obtained all that the certificates assumed to confer, and there was no breach of the provision of the mortgage which secures to him the stock, and this is really the intention of that instrument.

The assignment of a certificate of stock is not like the endorsement of a promissory note or bill of exchange, and there is no liability upon such an assignment. The effect of the assignment of stock in a corporation is to transfer title and not to bind the assignor to any personal liability. If, therefore, the appellant has any right of action, it must be by virtue of the covenants of the mortgage, for none is created by the assignment of the certificates.

The question whether the complaint does or does not state a cause of action depends upon the meaning of the provisions of the mortgage. If the promise in the mortgage is to be construed as an undertaking to pay the whole amount of the certificates, then a cause of action is stated, but if it is to be construed as an undertaking to pay the dues, so as to secure to

the holder the benefit of the stock, then no cause of action is stated.

There is, as appellant asserts, an essential difference between a mortgage containing a promise to pay the debt and one not containing such a covenant. *Buell* v. *Shuman*, 28 Ind. 464; *Griner* v. *Butler*, 61 Ind. 362 (28 Am. R. 675); *Gunel* v. *Cue*, 72 Ind. 34; *Sperry* v. *Dickinson*, 82 Ind. 132; *Bodkin* v. *Merit*, 86 Ind. 560; *Loehr* v. *Colborn*, 92 Ind. 24. There is in the mortgage before us such a promise, and the question is, what is the debt which the mortgagors agreed to pay? They are bound only by the promise in the mortgage, and not by the assignment of the certificates, for we can not extend the effect of the covenant beyond the fair and ordinary meaning of the language in which it is expressed.

There is no promise in the mortgage to pay the amount of the certificates, nor is there any promise to pay the purchase-money of the land. The promise is to pay all dues and is contained in these words: "The mortgagor expressly agrees to keep paid up promptly all dues on said three shares assigned to the mortgagee herein, coming to the association; that upon his failure so to do said mortgagee shall have a right to foreclose, as a part of the purchase-money, for all dues necessary to complete said three shares and make them par." This is the principal promise in the mortgage; it is this which expresses what the mortgagor's undertaking is, and as one thing is definitely expressed, none other can be implied. The express statement that the mortgagors shall pay such dues as shall keep the stock at its face value excludes the inference that they are bound to do some other thing. The principal promise is not to pay money to the mortgagee, nor to pay the certificates of stock, but to pay such dues as may be necessary to keep the stock in force. The legal effect of the promise is, that the mortgagor shall not allow the dues to become in arrears and by such a default cause the loss of the stock to the mortgagee. The covenant which follows the promise we have set forth binds the mortgagors to perform that promise.

It does not bind them to do something no't before mentioned in the mortgage. The reference is to a promise or debt previously set forth in the mortgage, for the words are "and the mortgagor expressly agrees to pay the sum above secured," and the only sum mentioned or referred to is the sum sufficient to keep all dues paid. There is no other debt, promise, or undertaking to which it could possibly refer. It seems perfectly clear that the only default which will entitle the appellant to foreclose the mortgage is a breach of the promise to keep the dues paid.

It is plain that, as there is but one principal promise or undertaking secured by the mortgage, the covenant "to pay the sum above secured" can only refer to the one main promise or undertaking, and when we consider the character of the stock and the law under which the building association was organized, the question becomes even easier of solution. It is evident that the transaction was simply this, that the mortgagee should take the stock for his real estate, and that the mortgagor should keep the dues paid, and, as the only agreement of the mortgagor was to keep the dues paid, this was the only agreement which the mortgage was intended to secure.

Judgment affirmed.

Filed June 18, 1884.